Good morning, Your Honor. May it please the Court, my name is Stephen Jenkins. I represent the appellant, the Shaw Group. With me today, may I introduce my colleagues, Katherine Strickler and Gregory Taylor. And may I also reserve three minutes for a moment. Thank you, Your Honor. It starts off with following the typical form that, for example, the American Bar Association has put out for an asset purchase agreement. And you have what you're buying, what you're not buying, what liabilities you're accepting, and then what liabilities you are excluding. And what would seem to help you here is that under 2.04, well, I should say actually under probably it's 2.02E, you're excluding an asset, the contract for construction, that's the And then you go back, and it seems to be, you know, per course, that under 2.04, you're then going to see, you're going to exclude any liabilities or obligations associated with excluded asset. That is the party's understanding, Your Honor. But then I come to a list of also the Schedule 3.17A, Roman 9, and it has on the page 2 of that, 8282, that you're assuming the guarantee, guarantee is a deal with the Buxton, who's your joint venturer, and Saudi American Bank. So was this just a, what happened here on this part? What happened here, Your Honor, is this is a contract that was putting together very fast originally by Jacobs Engineering. They were the stalking bidder. Then my client beat their bid, accepted the Jacobs form, except for certain changes. And I think it was a And so you have various provisions that conflict with each other. Now, our specific answer to this point, Your Honor, is, is at 2.04, it trumps anything to the contrary because it says under no circumstances. But your opponent's argument would be that the specific overrules the general. But the specific doesn't overrule a statement that under no circumstances is. I don't actually think they make that argument here. We also know here, Your Honor, that we don't assume any liabilities that go with special project claims. This is a special project claim, albeit it is something that comes on. The special project claims were listed after the contract was approved by the court. It is also a, it is also a completed contract. It is also a, a specifically an excluded asset, or at least we argue. But most important, Your Honor, it was put together fast because that's what happens in bankruptcy court, or so I'm told. I don't spend a lot of time there. And it's often put together fast, but nonetheless, it's, from your perspective, might not the argument be that this contract is ambiguous and the court should have taken testimony in order to figure out what the intent was? In fact, that is one of our arguments. And we, the intent is clear. The parties to the agreement and the gentleman who negotiated it both say, we didn't assume this liability. And that's why we rely so much on 10.08, no third-party beneficiary. You know, if people call that boilerplate, that doesn't mean much to me. It's still part of the contract. It's still important. Although 10.08 does seem to hone in, home in on employees as opposed to anything else. It allows some third-party beneficiary employees, as a matter of fact. It allows people holding options or third-party beneficiaries. But also here, you've got the order, which seems, the order would clearly countermand that if the order says something different. And this order that approves the sale, which is a 363 sale. The order that approves the sale says that the rights of third parties are preserved. Sure. Of course they're preserved. What Judge McKelvey said, Judge McKelvey was hearing these because the bankruptcy court was overwhelmed. Now, what he said is, is, and I have it written here, is all the terms and provisions of the APA are binding in all respects. He started off his order saying the APA controls, and then he went on and said that their rights, the rights of a, in this case, a creditor are preserved and the rights are preserved. What they didn't have prior to then, and what they don't have today, is the right to say whether their contract was assumed or not. That right, the right to define what this contract means in all its glorious mess, had to be left to my client, the purchaser, and the debtor, because they had to work things out. They had to say, what does this mean? This seems contradictory. And they worked it out over periods of months. As in all big set sales, you have to have a no third-party beneficiary language, or everybody can come and say, but you know, if you read this here and this here, we're assumed, because everybody wants to be assumed. Your point is well taken. That's why it's put in there. I've even written on this particular provision. But the point is that you've got an order that says something different. It does not say differently, Your Honor. It says the rights they already have are preserved. Saudi American Bank's rights to pursue its claim is preserved once it's determined that somebody is an assumed liability. It does not say, nor does it purport to say, that they have the ability to determine whether they're an assumed liability. The determination of whether this is an assumed liability was left for my client and the debtor. It was not left open for any other party. Their rights were not removed in one little degree. He says, if you have an assumed contract, if you have an assumed liability, your rights are preserved. They continue with their rights. And they get to litigate against us once they're determined to have an assumed contract. But they aren't given it. Nowhere in that order does it say one step further and say, hey, you get to determine whether you have an assumed contract. You cannot get there from what is said. And the normal, of course, Delaware rule of contract construction is you look to the terms of the contract. 10.08 is clear. When you go to 3.17a Roman 9, did you ever . . . what was the reason that was put on there? You said it was done quickly, but what was the reason . . . It specifically mentions SAMBA, huh? It does. And it mentions that there is a guarantee. Now, as a matter of fact . . . Did you know why it was put on there? They were listing . . . there was a listing of all the liabilities that they know of, although they actually didn't know there was money due. There were two things owed to SAMBA. There was a guarantee that was backed up, and there was also a note. You notice, Your Honor, the records were a mess. The negotiators apparently did not know about that 6.5 million. But they did list all of the liabilities. What they will say, what Mr. Carroll's affidavit, which was stricken, says, and what my client says is, we listed everything there. And then we came back and said, excluded liabilities, saying, but if you're excluded under no circumstances, will you be . . . is it an assumed liability? So, despite whatever that schedule says, under no circumstances will this control. Now, is that the best way to draft a contract, Your Honor? No, of course it isn't. At 2 a.m., have I sometimes written things that I wish later I had written clearer? Yes. But I think that goes back to why 10.08 is so important. Because the contract, the APA, is a mess. The parties have to work it out in good faith. It's bankruptcy court. But what the APA does, the model form, which, in effect, you follow, it gives you an exemplar, and then your schedules become oftentimes the critical factor here. And unfortunately, the schedules here are in tension. They're right. You couldn't read them as contradictory. It is read by the parties as under no circumstances trumps. Mr. Carroll, for the debtor, said, yeah, that's right. The reason, of course, he did it is because there's an asset linked to this liability. And the asset is worth maybe $100 million, theoretically, maybe $30 million, practically. We didn't want to take on that litigation. They didn't want to give up that asset. But just to give you an example of . . . you're right, you said glorious mess, and that may be a pretty good description here. When you look at the A139, 3.17, these are the agreements and commitments, it looks like, that they are assumed. And you look at Roman 9 there, any bond, debt, or note, loan, or credit agreement, paren, other than the Jacobs credit agreement or the Jacobs DIP agreement, close paren. So when they want to eliminate something, they know how to do it. Sometimes. Elsewhere, when they talk about liabilities, assumed liabilities, they say everything. The definition of assumed liabilities is everything. And then you have excluded liabilities saying, but the assumed liabilities is really every liability they could have. And then there are excluded liabilities taken away from that. The parties will tell you, the parties did tell the district court, the district court said, I think, the district court didn't say why, but it must be unambiguous, they wouldn't consider the evidence of what the party's intent. There's no doubt about the party's intent that this liability wasn't assumed. Just no doubt whatsoever. And if it went to testimony, we would win. And only if no testimony can be considered, and this is so clear as a matter of law, can my friends at Saudi American Bank win. They have to get through two hurdles. First, they have to get through the 10.08. And second, they have to then go through the excluded liabilities. And they also can't have, as the district court did, she took some facts outside the contract. She took the statements of the lawyers at the hearing, but wouldn't allow testimony by the parties of what they meant. In the end, and this is a contract, this is a debt that we did not assume. We didn't want to assume. But is it a mess? Yes, of course it's a mess. We thought we had protection in that only we, there was only two parties to the bargaining, what does this mean going forward? And they agreed. If you allow a third party in, such as Saudi American Bank, anytime you have this, and you get this fairly often in bankruptcy situations, you create a real problem. Thank you, Your Honor. I do have a question on the, you acquired certain assets. That's right, Your Honor. At the bankruptcy sale. And there was, instead of paying money for them, you assumed certain liabilities. That's correct, Your Honor. Does the record show the assets that were acquired and whether or not this contract for which this guarantee followed was one of the assets that you acquired? Does the record show that? The record shows we assumed 700 million of assets that were listed here, unfortunately, Your Honor. Okay. To get a clear statement, there is not one in one place. It is here, it was valued by the parties as about 700 million of assets and offsetting liabilities. But unfortunately this is as clear as it gets. And that's been one of our problems, of course, in the litigation. Carol's position was that the Ras Tanura project was a completed project. That's correct. It was completed, Your Honor, except for maybe punch list items. All right. And your position is the facts will bear that out? Absolutely, Your Honor. It was finished several years before. Any other questions? Good. We'll have you back on your medal. Thank you, Your Honor. Thank you very much, Mr. Jenkins. Mr. Rosenfeld. Good morning. Good morning, Your Honors. May it please the Court, my name is Daniel Rosenfeld and I represent Saudi American Bank. I take it the Ras Tanura contract was a completed contract. Is that correct? Your Honors. With the exception of punch list items. With respect to that, Your Honor, the answer is no. Under the asset purchase agreement, the Ras Tanura contract could not be a completed contract as defined in the asset purchase agreement. The asset purchase agreement defines completed contracts. Why was the construction? I'm sorry. Why was the construction agreement listed on Schedule 2.02B as a completed contract? It's not, Your Honor. What's listed on Schedule 2.02B is not the in-kingdom Ras Tanura construction contract. It is an out-of-kingdom contract. I've got here a Ramco Ras Tanura, Buxom, refinery upgrade. I appreciate that, Your Honor. The contract number there relates to the sale of equipment to Saudi Aramco by SWEC. It does not relate to the in-kingdom Ras Tanura contract. Isn't that an ambiguity in and of itself? It's not, Your Honor, and here's why it's not an ambiguity. You can answer, Judge Ambrose. The reason it's not, the answer really goes to both of you. The reason it is not an ambiguity is because under the definition of completed contracts in the asset purchase agreement, and you can find that at page A325 or apparently 117, completed contracts are contracts of sellers, Your Honor. The sellers in this particular instance are defined in the preamble. They do not include Buxom, Stone and Webster. The in-kingdom contract that Shaw refers to as being a completed contract was not a contract of the sellers. So it is impossible that that is the contract that is being referred to in the asset purchase agreement's description of completed contracts. And what it is actually referring to by project number is a separate contract, and that's laid out more specifically in our brief. Again, just looking at this fresh, as I mentioned to Mr. Jenkins at the outset, it would seem that there's not much doubt, or it seemed that there wasn't much doubt that the construction contract was an excluded asset. You're now saying that the construction contract is not excluded because this particular transaction, this particular project, is not listed on the completed contracts? What about special projects? That's correct. It's also not. Well, the in-kingdom contract is listed on the special projects claims list. So if it's listed on the special projects claims list, it's excluded? The construction contract? No, Your Honor. What we've argued and what I would ask the court to take note of is that the special projects claims list was not part of the execution copy of the contract, and the court in its order did not approve the special projects claims list. And, in fact, if you look at Section 2.07 of the asset purchase agreement, it indicates that the only schedules that will be included are those that are prepared at the time of the execution of the agreement. Now, Your Honor, if I may, I'd like to point out that this discussion regarding Ross Tannura being a completed contract is in large part besides the point here. We'll get to that. When I look at excluded assets under 2.02, A-128 and A-129, excluded assets are special project claims. And you're saying that when you go to the schedule, this is not listed as a special project? No, that's not what I've said, Your Honor. What I have said, Your Honor, is that under the asset purchase agreement, the only schedules that are to be included in the agreement are those that were prepared at the time of the execution. It is uncontested, Your Honor, that the special projects claims list was not prepared at the time of the execution of the contract. But I only can deal with the record that I have before me. Well, that is the record before you, Your Honor. Under A-212, I have special project claims 2.02E. That's what we've got here. And it's contract for construction dated as of June 28, 1994, buying between Saudi Arabian Oil Company, Saudi Aramco, and BS&W, which is, I guess, your folks, or I should say the joint venture here, designated by Saudi Aramco's contract number 65004-00. That is our contract, right? That is the in-kingdom contract, Your Honor. It is referred to in a special projects claims list  So how did this get added on? It got added on later on? It was added on later on, and the debtor filed it later on. And that's uncontested in the record, Your Honor. Aren't you now making Mr. Jenkins' case an alternative argument that at the very least he should get a remand because this is ambiguous and you need testimony to sort out this glorious mess? Absolutely not, and let me explain why, if you'll allow me to explain why this is not a glorious mess at all. If Your Honors, we'll begin with the sale order, and particularly paragraph 12 of the sale order. And where in the appendix are you? I look to page A437, Your Honor. Paragraph 12, six lines up from the bottom of the page, Your Honor, says notwithstanding anything to the contrary in this sale order, This provision, Your Honor, Your Honor, the provision here, this sale order calls for the definition of assumed contracts to be applied. Assumed contracts is a defined term in the agreement. Shaw can argue what it likes regarding the assumed contracts, and it hasn't, in fact, made much of an argument regarding assumed contracts. Well, it's argued relating to assets and liabilities. If it's an excluded asset, it ain't an assumed asset by definition. Your Honor, I would agree with that point, but I would also suggest to the Court that the term assumed contracts runs along a separate track than the term assumed assets, and that in this particular provision, and if the Court reviews the sale hearing, one will understand why this provision was added, and it was a late add to the sale order. The parties came, the debtor, the purchaser, Shaw, and various other interested parties came before the Court at the sale hearing, and the debtor and Shaw and the Accreditors Committee and the Equity all stood up and made clear their understanding that all assumed contracts, all contracts were being assumed by Shaw unless they were written on two lists, the completed contracts list or the rejected contracts list. No mention, Your Honor, of the special project claims list just by way of which it seems noteworthy. The Court made clear that if you are not on those lists, your contract would be an assumed contract. Assumed contracts is defined very broadly. Stop right there. The completed contracts list is a list that has the contract listed which aside from the number would make it appear, let me ask my question, except for the number would make it appear that it was the in-kingdom contract. Correct. We are not looking to enforce the in-kingdom contract, Your Honor. I'm not asking that question. Since that listing would make it appear that the completed list which was excluded from the assumed contract would include the in-kingdom contract, the only thing that confuses that is the number matches the out-of-kingdom contract. How can you not say that that isn't an ambiguity? Because you said it's one of the two key lists. Your Honor, your contract was being assumed as if it was on that list. The guarantee, which is a separate contract with SWEC, between my client and SWEC, Stone Webster Engineering Corporation, was not on that list. There's no argument that it's on that list and it's therefore not a completed contract. It says it's a completed contract because it's on that list. The guarantee is not on that list. The contract is listed on that list, which is excluded from assumed contracts. Your Honor, the definition of contracts is all obligated. Contracts is a defined term in the asset purchase agreement. But Judge Fischer's point is that if it's excluded there as a construction contract and then you go back to 2.04C, which all liabilities are obligations that are associated with this excluded asset, then it would appear that Shaw is not liable. The only thing that really brings, for me, so far, that brings Shaw back in the game is this specific listing of a reference to Saudi American Bank as a guarantee that's listed. So his point is exactly where I am. Well, if you'll allow me to address the point, then. You can look at it. The point to the entire bench, then. Paragraph 12 is the key point. It says that notwithstanding anything to the contrary in this sale order, in other words, whether you're looking at Section 10.08 regarding third-party beneficiaries, whether you're looking at Section 2.04 regarding excluded liabilities, we're putting those to the side in this sale order. Paragraph 12 is a typical provision. It's called, in effect, preservation of rights provisions, right? It is a relatively typical provision, Your Honor, although in this particular instance it was the provision of the change the most as the sale order was being finalized. Were you present at the creation? I was not, but I've seen the various drafts, Your Honor. Going to paragraph 12, aren't the two key words in paragraph 12 the words assume contracts? Correct. Okay. And that's the discussion we just had. I think there's a question, it appears to me, it appears to me that there's at least some question as to whether or not that in-kingdom contract was or was not assumed because of its presence on the completed list. Your Honor, first of all, Shaw has not argued that the contract with my client, the contract with my client, Stone and Webster Engineering Corporation's contract with my client, was a guarantee. It was not the in-kingdom contract. The contract with my client was itself, is itself defined as an assumed contract. It is not on the completed contracts list. It is not on the rejected contracts list. That's a good point, except why did you sue under the asset purchase agreement rather than the guarantee? We sued under the asset purchase agreement to enforce the guarantee. And that is what the court below in fact did. Wouldn't you sue under the guarantee? I mean, that's where you have something to hang your hat on, more so than the asset purchase agreement. We sued under the asset purchase agreement to enforce the guarantee. The district court, when it entered this sale order, indicated in this paragraph that all rights against Shaw are fully preserved and should be fully enforceable after the closing against Shaw unless such rights or remedies were waived on the record or at the auction. Those things did not occur here, Your Honors. While we're talking about the guarantee, under A282 of the appendix, Schedule 3.17A, Roman 9, the problem that Mr. Jenkins has, what does this mean? It's the Buckson S&W Limited Saudi American Bank. I mean, it's about as general as one could possibly get, but I think somebody can explain to us what it means. Could you give me the page? It's A282. I'm sorry. I mean, it's to me the biggest piece of evidence that I see that's in your favor. It is, Your Honor. And with regard to this, what the record was below, what Shaw had indicated in its response to request for admission, that it assumed that this was the particular guarantee that we are discussing here today, that the court below ruled on. And the court below found that Shaw had ignored that. But it says guarantees, Buckson S&W. What does that mean? Is it this guarantee? Is it another guarantee? It's this guarantee according to Shaw. What would tell the court that it's the guarantee you say it is? In this particular instance, it was Shaw's response to a request for admission, Your Honor, and the court took note of that in its decision below. When there's multiple plausible readings, don't we have to consider extrinsic evidence? I think in this particular instance there is only one plausible reading. You're getting a lot of resistance on that one. I appreciate that I am, Your Honor, but let me make this point. The fact of the matter is that this asset purchase agreement has definitions. Every single term that we are asking the court to look at is defined. The definition of contracts is defined. The definition of assumed contract, it doesn't appear that this is an assumed contract. In fact, it appears that the construction contract is an excluded asset. Your Honor, we're not here talking about the construction contract. We're talking about the guarantee. That is a separate contract. The court below found that it was a separate contract, and that is a correct finding. And it is a separate contract as contracts were defined in this asset purchase agreement. That is why, Your Honor, there's no ambiguity. Because under this asset purchase agreement's definition of assumed contracts, the guarantee constitutes. If you wanted to be specific, for example, in Schedule 3.17A-9, that it would specifically bring back in something that otherwise would be eliminated, i.e., the guarantee, wouldn't you have to say that the guarantee dated such-and-such date, probably something in 1994, between this party or this party in favor of that party with respect to the construction? I mean, just looking at the words, names of entities that might be a party to some guarantees, doesn't tell you a whole lot about extrinsic evidence. I think that the sale order makes clear, Your Honor, how this is to be dealt with. Does the sale order reference this guarantee? Absolutely not, Your Honor. But what it does is it references it by defining it as an assumed contract. It defines this as assumed? No, no. The sale order sets forth what the definition of an assumed contract is, Your Honor. Our guarantee meets that definition. But where is this guarantee that it should be an assumed contract? Do you need a paragraph 12 or any other provision? Only by reference to the definition, Your Honor. In other words, this sale order makes particular reference to the definitions in the asset purchase agreement. The definition of assumed contract is on what page? Is it in the order or is it the APA? It's in the asset purchase agreement, and it's also specifically referenced in the APA. The sale order specifically says that the definition of assumed contracts from the asset purchase agreement will be applied in the sale order. What attendance number on the APA are you for the definition? So the assumed contracts definition is located at page 322. And the asset purchase agreement specifically adopts that. So this doesn't help you. Assume all contracts of sellers other than the rejected contracts and the completed contracts. And there's no question, Your Honor, that we meet the definition of a contract of seller and that our contract, the guarantee, is not on the list of completed contracts or rejected contracts. Well, then, once again, I go back to Judge Fischer's point. But for that number, what was the project number of the contract? Your Honor, I'm not arguing, I'm not suggesting to the Court that my argument is dependent upon that project number. I'm talking about the guarantee. The guarantee? No one's arguing here that the guarantee, if it's numbered differently, would be on the completed contracts list. What they're saying is that the Rastanura project, a construction project, that number would refer to the in-kingdom contract, a construction project, as opposed to an out-of-kingdom contract for the sale of certain equipment. Let me ask you about that. I'm sorry. No, go ahead. You didn't finish your answer. I believe that that confuses an important issue as to which contract is at stake. Also, Your Honors, if you look at paragraph 22… But that's my point. If it's confusing, I'm not saying you may not win in the end. Don't must you get extrinsic evidence. It wasn't the court in error to have excluded. Absolutely not. Because it's not… Absolutely not? Absolutely not. More than ever. Absolutely. Because, Your Honor, what is not confusing… …is the language of the contract. The language of the contract is clear. That we meet the definition of an assumed contract. The guarantee meets the definition of assumed contract. That we have rights and remedies against shells. I don't know what it means here on page 282. I mean, that's not specific at all. You would have to explain to any third party what that means. I'm not saying you can't prevail. Don't get me wrong. You might prevail. But you have to tell me what… These are just two names. Your Honor, there was an admission below in response to request for admission… And where's that in the record? …that Judge… I mean, if it's in the record, let's look at it. I don't believe that that is… No, they are in the record. I'm sorry. I don't want… They're in the record, Your Honor. I'm not sure that they're in the… That those… Wouldn't that be front and center? …are in the appendix. No, because, Your Honor, it's not disputed by Shaw… That the items listed on that particular schedule relate to the guarantee that's at issue in this case. It wasn't disputed below, and it hasn't been disputed before this court. Let me ask you about Carroll and his declaration. You say in your brief that even if we find some ambiguity, his testimony is either not helpful or irrelevant. And just explain to us briefly why that's the case. Your Honor, it's not helpful, first of all, because it focuses entirely on the time before the sale order is being entered. It doesn't include any reference to the sale order. It only includes reference to the negotiation between the two parties, not the sale hearing, which resulted in further negotiation and ultimately resulted in the sale order and the amendment to the asset purchase agreement through the sale order. It also, Your Honor, for example, misses, and I'll just refer the court specifically to paragraph 22 of the sale order. And paragraph 22 is important because it starts off by saying that under no circumstances shall any holder of an excluded liability be able to commence, continue, or otherwise pursue or enforce any remedy, claim, or cause of action against Shaw, which would seem to hurt our argument. But then the exception to that, Your Honors, is that it says except with respect to the small liabilities assumed under an assumed contract by Shaw pursuant to paragraph 12 of this sale order. But we don't know that this is an assumed contract. In fact, when I read you the definition of assumed contract, it doesn't seem to fit there. Is there something in paragraph 12 that says that this guarantee is an assumed contract of Shaw? There is the listing in schedule 3.17, first of all, Your Honor. Does paragraph 12 refer to schedule 3.17? It, of course, does not because what paragraph 12 does, Your Honor, is it refers to the definition of assumed contracts. Assumed contracts is a defined term. And I just read you the defined term, and that doesn't seem to help you. Let me explain why it helps you, Your Honor, because I'm not quite sure why it is that you're not seeing it. But let me walk you through it step by step, if I may. You say it's on page A322? A320. Yeah, A322. All contracts of sellers, including the employee agreements, other than the rejected contracts and the completed contracts. So what I would ask Your Honor to do is then look at – and certain terms are defined in that definition. For example, contracts is a defined term. The definition of contracts is all commitments, contracts, leases, licenses, agreements, and understandings written or oral relating to the assets. And then the important term or the operation of the business. But that's not the important thing. If not contracts, the key word here would be completed contracts because that's your defined term. And that's another defined term, Your Honor, and I agree with that. Completed contracts is on page A325. Right, and completed contracts are those contracts listed on 2.02B. Right, and you can see that Swepp's guarantee is not listed on 2.02B. No, but what they're talking about there are construction contracts. Well, I don't know why you say that they're talking about construction contracts. There's nothing in this agreement in the definition section that suggests that they're talking about construction contracts. In fact, Your Honor, the definition of contracts specifically refers, for example, to contracts of sellers including – I'm sorry, all commitments, contracts, leases, licenses, agreements, and understandings. This all comes back to Judge Fischer's point. 2.02B, you're saying this is an equipment contract with respect to this particular completed contract. Was there a project number for the Ross-Denora project that was different than this? Yes. What was it? 65004, I think, is what it is. But, Your Honor, that is irrelevant because the question is not what was a Ross-Denora project. The question is what is the guarantee listed. From Mr. Jankin's perspective, it is relevant because if this construction contract is excluded as an excluded asset, and then you look at 2.04, I think, C, which says all rights, obligations, and liabilities are all liabilities and obligations associated with excluded assets. Well, the argument is only good if you ignore paragraph 12 of the sale order. Mr. Rosenfeld, let me ask you another question, if I could. You've refreshed my memory on these various terms, so you've accomplished something. But, you won at the summary judgment stage here. Yes. And listening to the colloquy and to your answers and remembering what the opposing counsel said, why isn't there a genuine issue of material fact as to what this contract says? I mean, why isn't that the answer to this question? This should go back for trial, and a judge or a jury should determine who is to pick up this liability. Look, I don't think it can go back, and there's a couple of different reasons that I think it cannot go back. First of all, every term that is necessary to determining whether or not the guarantee that Sweck gave to my client is defined specifically in the agreement, and all we're asking this court to do is to look to those particular definitions. I don't think that this court should send this back for the parties to send in witnesses to talk about what the sale order meant. I think this court should determine what the sale order meant, just as the district court determined what the sale order meant. And we would suggest, Your Honor, that the district court got it right, that the district court understood that when those parties came before the district court in bankruptcy, sitting in bankruptcy at the time, and said, All contracts, except those that are on these two lists, are going to be assumed contracts. And if your name is not on those two lists, then your contract constitutes an assumed contract, and you'll have rights and remedies. I think the court understood that that was important to enforce that provision after the parties had stood up in a courtroom and told the judge that that would be how parties would be treated. I said you refreshed my memory, but as we went through these definitions again, I think you can make an argument that whether or not that guarantee was listed under the definition of contract. I don't think that you can, Your Honor. You say you can't. And I say that you can't, given the admissions on record in the case, because Shaw has admitted on the record in this case that its guarantees is listed. Why isn't that front and center in the appendix and in your brief? Because it's not being argued differently by Shaw here today. And it wasn't raised on this appeal. All the more reason you would put it front and center in your brief. It would be at page one. It would be a summary of the argument. It would be a whole argument. They conceded. Your Honor, perhaps it should have been front and center, but it was conceded below. The court made a particular finding. Is there any place in your brief that it's referred? No, because Shaw's brief doesn't claim, Your Honor, that the guarantee constitutes a completed contract. So why, as an appellee, when the other side has not raised this issue because it was conceded below, would we make fodder out of something? That's frankly a somewhat long statement. Because if you're correct, it's very good fodder for you. Well, I am correct, Your Honor, on that particular point. And I'm not saying you're not. I'm saying that it would seem that that would be your best argument. It is part and parcel of our argument, Your Honor, but it was not in dispute that the sweat guarantee was— If it's part and parcel of your argument, then it has to be part and parcel of this, right? Apparently, I stand corrected, Your Honor. My apologies. We am. Mr. Rosenfeld, thank you very much. We'll hear from Mr. Jenkins. Thank you. May it please the Court. It would still seem that you've still got some explaining to do in connection with what's—this guarantee list as something that is assumed. I don't think it says it's assumed, Your Honor. Well, it says it's a 3.17— It says it's a list of all contracts and guarantees.  But isn't 3.17 a list of those things that are assumed—isn't that assumed liability? I don't believe so, Your Honor. However, I believe one can read under assumed liabilities and find the definition that would say everything's an assumed liability, except then you go to excluded liabilities that says except for the following. With Schedule 3.17a, Roman 9, borrowings and guarantees, is that included or excluded? Neither, Your Honor. It's just a list. Why? What's its purpose? What's its purpose? I think it's a list of what—of various contracts and then the guarantees that come after to tell people now. To tell people what? To tell people what is out there. You have to go elsewhere in the agreement to find out if they're assumed or not. The basic rule—Mr. Rosenfeld is quite right on this. The basic rule is if it's a borrowing of the company, it's assumed unless it's carved out. So you would first say they're assumed unless there's something that takes them out. Now, the reason this is an excluded liability is because excluded liabilities include anything associated with excluded assets, and excluded assets include concluded contracts. Let me just back up. In general, on Schedule 3.17a.9, what are supposed to be the items that are listed there? Liabilities. I think you will see under 3.17 in the contract itself— Just the schedule of liabilities of the sellers. That's right, Your Honor. And nothing more. That is my understanding, Your Honor. But, Your Honor, I would say— Lead me through that and tell me how you say that that's—it's just that. Let me turn to 3.17 in the contract itself, Your Honor. What page? Page 139. 131? 139, I believe, Your Honor. It says Agreements and Commitments. And then it says that Schedule 3.17, which is actually a number of schedules, is a true, complete, and correct list of all contracts conforming to the description set forth in Section 3.7, to which a seller is a party, copies of which have been delivered and made available to the buyer. And it goes through contracts, and then it also calls liabilities. But if it's a contract, aren't you assuming all contracts, but for those you exclude? Yes, we exclude. We don't believe this is a contract. We believe it's a guarantee. It's a liability. It is clearly excluded because it's associated with a completed contract and a special project claim. Isn't a contract—isn't a guarantee an agreement? Yes, Your Honor. Any debt, except probably a tort claim, probably arises from an agreement. So that's a contract. Well, that's what the judge below said, but that's not how it's being used in here because we define contracts versus liabilities. These liabilities, all of them, except for, I guess, some tort claims, have agreements underneath and, therefore, contracts. But it's used differently, just like it's used differently in the bankruptcy code. But contracts—this would be a good point for Mr. Roosevelt, if he made it— is that if you look just at the definition of contracts, and not completed contracts on page 5 or page 117, all commitments, contracts, leases, agreements, understandings, written or wrong, relating to the assets of the operation of the business to which any seller is a party or by which it or any of its assets are bound. Which, if you take that literally, means every liability here is also a contract. Now, if you look at the schedule of completed contracts to see how they use it, and I think it was— He's saying that the project number doesn't conform to the— He's quite right on the project number. But the point I'm making here is if you look down— These are construction contracts. You can see they're doing a power plant, an ethylene furnace, et cetera, et cetera. That's how they basically use it, although in the definition it is quite correct. The definition is broader than that. But it isn't how it's used throughout. And this gets back to 10.08, my original point. Now, completed contracts—let's just back up for one second. Completed contracts is on A196, is that correct? I have it on A196. It's also A404. It's two places. So the project number, if you guys were attempting to— or your side, I realize you weren't there either at the creation. What would the project number be if you wanted to make sure that this particular matter that's before us today, this project was excluded? What would be the project number? You can see that project number on Schedule 2.02E, the special project claims. It's contract number 65004-00. That is our in-kingdom contract because there was this out-of-kingdom contract between Stone and Webster. And we originally thought this just applied to us, but we didn't realize the contract point, which my friends brought up. And they're right on the contract number. But this also says Bugshan. The only Bugshan around is Bugshan, Stone, and Webster. Bugshan is Abdullah Saeed Bugshan. When you say Bugshan, you're looking at 196? Yeah, the client name. This is 196, where it says Aramco Ras Tanura. Ras Tanura Refinery had two contracts, an out-of-kingdom contract performed in Houston, and they brought stuff over, and in-kingdom performed by Bugshan, Stone, and Webster. The project number, they're quite right, refers to the out-of-kingdom contract. But it's also true that that out-of-kingdom contract had nothing to do with Bugshan or Bugshan, Stone, and Webster. By putting the word Bugshan in here, the drafters, I believe, created only one possible inference. This applies to both contracts. You have the number over here, and sure enough, so it applies to the out-of-kingdom. But if you're looking for ambiguity, and I know, Judge Fischer, you said, isn't this ambiguous? Mr. Rosenfeld says no for one reason. I say no for another. I say my backup is at least it's ambiguous. Actually, in your brief, you say, no, it's not ambiguous. It's clear that you should win on this issue. That's right, because you have to give, under Delaware law, just like all law, you have to give all words in here a meaning in this. And I'll say the same thing I said to Mr. Rosenfeld. You might be right. I'm not sure that what you just said gets us there without a court hearing this and making up its mind. And that can be a rational determination also, Your Honor. I would say you have to rule out Bugshan. Is it a minor inconsistency? I mean, everything seems to go the other way. I don't think it's a minor inconsistency, Your Honor. No one would have put in the word Bugshan. It's so unique. Well, I guess unique can't be qualified. It is unique. No one's ever heard of Bugshan before. It can only refer to Bugshan, Stone and Webster. It has to refer to that. And to apply normal Delaware law, give all the words a meaning, you'd have to say this applies to both contracts, I believe. But let me, if I could just say, if we get back to 10.08, we have all this argument. The next time around somebody drafts one of these, there might be 20. But even there, I think Mr. Rosenblum has a good point, that if you read paragraph 12 of the order, it would be pretty hard to say that if the order contradicts the APA, the order should prevail. But that assumes that they had a preexisting right to come here and argue the definition of whether they have an assumed contract. Next time around, Your Honor, there are going to be 20 people up here all with creative arguments, maybe not as creative as my friend Mr. Rosenfeld, but they'll be creative of why they're in rather than out. Whether they're creative or not, I mean, the point being, and they may not be, the point being that somebody needs to sort this out. Yes, Your Honor, the parties to the contracts. The parties to the contracts sort out whether it's in or out. And if they disagree, if the debtor disagrees with us, they say it. That's how it's set up. And there's nothing in the sale order that says differently. But the parties to this asset purchase agreement and the order that went along with it are disagreeing as to what's included and what's not included. The parties to the asset purchase order aren't disagreeing, Your Honor. And they're the ones who set up. Thank you very much, Your Honor. Any other questions? The court thanks both counsel for a helpful argument. We'd like a transcript made of the argument and ask that both of you share the cost. Please check with the clerk's office as you leave. Take the case under review. And by the way, Mr. Rosenfeld, to the extent I was looking, it seemed like I beat up on you. I didn't mean that. I'm sorry. Thank you. Please rise.